UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Samuel Peter Laichour, | No. 1:25-cv-01891-GSA |
| Plaintiff, | **OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| v. | |
| Commissioner of Social Security, | |
| Defendant, | (ECF No. 9, 11) |

### I.      Introduction

Plaintiff Samuel Laichour appeals the Commissioner of Social Security's denial of his applications for child disability[1] and supplemental security income (SSI).

### II.     Procedural Background

On September 1, 2022, Plaintiff applied for child disability and SSI alleging disability as of October 11, 2007.  The claims were denied initially and on reconsideration.  On January 10, 2025, the ALJ held a hearing.  AR 38–76.  On March 28, 2025, the ALJ issued an unfavorable decision.  AR 14–37.  The Appeals Council denied review on October 26, 2025.  Plaintiff then filed a complaint in this Court.

---

[1] As the ALJ explained, after the hearing and upon the advice of counsel, the claimant amended the alleged disability onset date to October 11, 2022 (Exhibit 11D). This is when the claimant attained age 18.  Therefore, the decision was under the adult disability rules only.  AR 17.

1

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review the Commissioner's denial of disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but it is less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The court must consider the whole record. If the evidence reasonably supports two conclusions, the court must affirm the Agency's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

To qualify for benefits, a plaintiff must establish an inability to engage in substantial gainful activity due to a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his impairments are severe enough that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve decision uniformity, the Commissioner established a five-step process for an ALJ to employ. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the Claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a Claimant has engaged in substantial gainful activity during the period for which Plaintiff is alleging he or she experiences a disability; 2- whether the Claimant has medically determinable "severe impairments" affecting the

Claimants ability to perform basic work activities; 3- whether these impairments meet or are medically equivalent to one of the listed impairments in the agency's regulations (20 C.F.R. § 404, Subpart P, Appendix 1); 4- whether the Claimant has the RFC to perform past relevant work; and 5- whether the Claimant has the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given a Claimant's RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.   The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since the amended alleged onset date of October 11, 2022.  AR 19–20.  At step two, the ALJ found Plaintiff had severe impairments of: autism spectrum disorder and borderline intellectual functioning.  AR 20.

At step three, the ALJ found Plaintiff did not have an impairment or combination thereof that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 22–23.

Prior to step four, the ALJ evaluated Plaintiff's RFC and concluded Plaintiff had the RFC for a full range of work at all exertional levels with the following non-exertional limitations:

> he can understand, remember, and carry out simple instructions; he can occasionally interact with supervisors and coworkers; he cannot interact with the public; and he can deal with occasional changes in a routine work setting.

AR 23–29

At step four, the ALJ found that Plaintiff had no past relevant work.  AR 29.  At step five, the VE testified that considering Plaintiff's vocational profile he could perform jobs existing in significant numbers in the national economy, specifically housekeeping cleaner, industrial cleaner, and kitchen helper.  AR  29–31.

The ALJ thus concluded Plaintiff was not disabled.  AR 31.

## V.      Brief Factual Background

Plaintiff has autism and was enrolled in special education through high school for severely delayed speech and language, comprehension, and impaired social interaction.  He graduated high school and took online college courses.  He socialized minimally with others at college because he took only online courses.  He had no group work, took one class per month and needed help with registration.  He had special accommodations of extra time for homework and tests, had a tutor, and 1.5x time for assignments.

He couldn't go out alone.  His mother accompanied him to stores, helped with chores such as laundry and handled his mail.  He only talked with family members. Plaintiff's clinicians noted autism majorly impacted communication, self-care, and self-direction.  One clinician opined off task behavior would be 25% and precluded low stress work.  The consultative examiner noted intense eye contact, restricted facial expression, a slow rate of speech, sensitive sensory functioning, and restricted affect.   Intellectual testing results were low average in verbal comprehension, perceptual reasoning, and working memory.

## VI.     Issues Presented

Plaintiff asserts five claims : **A-** "The ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of mental dysfunction" (MSJ at 6–10)[2]; **B-**"The ALJ failed to properly evaluate the treating medical source opinion of Kutraj Sidhu, M.D." (MSJ at 11–15); **C-** "The ALJ failed to properly evaluate the examining medical source opinion of the psychological consultative examiner Tikesha Leslie-Jones, Ph.D." (MSJ at 15–20); **D-** "The ALJ failed to properly evaluate the medical source opinion of the State agency  psychological consultant Joan Joynson, Ph.D.;" (MSJ at 20–22); and, **E-** "The ALJ failed to provide germane reasons for discounting the testimony of Plaintiff's mother." (MSJ at 22–25).

### A.      The ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of mental dysfunction

#### 1.      Applicable Law

[2] Notably, there is significant overlap between Plaintiff's claim concerning the improper rejection of Plaintiff's subjective testimony, the opinions of the medical experts, and the testimony of his mother. The Court will endeavor to address each individually.

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC), which is the most that a claimant can do despite the claimant's particular limitations. The RFC is "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all impairments, both severe and non-severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). An ALJ meets this burden with a thorough summary and interpretation of facts and conflicting evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies step one and the ALJ finds no malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the claimant's ability to perform work activities. SSR 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also SSR 16-3p. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom;  and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**2.    Analysis**

5

Because the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," and found no malingering (AR 23), the ALJ's evaluation of the claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10.

Here, the ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 23. The ALJ then proceeded to discuss Plaintiff's medical history, which follows. AR 24–29.

**First**, Plaintiff contests the ALJ's finding that he had no specialized mental health treatment. MSJ at 8. Plaintiff cites his individual program plan (IPP) with the Central Valley Regional Center (CVRC)[3] for the years at issue, 2022 to 2024 (AR 659–71), which reflect Plaintiff's effort to improve in his independent decision-making, daily living, self-care, relationships, and health despite his life-long diagnosis of autism.

Plaintiff's full argument is as follows:

> Here, the ALJ's analysis failed to satisfy the clear and convincing standard. First, the ALJ rejected Plaintiff's allegations of mental dysfunction because the ALJ found that they were not consistent with the record that showed Plaintiff had no specialized mental health treatment (Tr. 27). However, contrary to the ALJ's findings, the record showed Plaintiff had pursued appropriate mental health treatment for his autistic spectrum disorder. For instance, the record included Plaintiff's individual program plan [IPP] with the Central Valley Regional Center[4] for the years during the period at issue, namely 2022 to 2024 (Tr. 659-671). These notes reflected Plaintiff's effort to improve in his independent decision-making, daily living, self-care, relationships, and health despite his life-long diagnosis of autism (Tr. 659-671). For instance, Plaintiff's treatment plan noted how he only socialized with his parents but wanted to work on socializing with others (Tr. 661). Plaintiff's records from Central Valley Regional Center showed that he was being followed for his autism. The ALJ did not explain what type of treatment she expected for Plaintiff's autism that was missing from the record (Tr. 27). See Lapeirre-Gutt v. Astrue, 382 Fed.Appx. 662, 664 (9th Cir. June 9, 2010) ("claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."); see also Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017) ("Any

[4] "CVRC provides assessments, evaluations, programs, activities, and case management for people who experience intellectual and developmental disabilities." https://www.cvrc.org/about-us/

6

evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated"); Moon v. Colvin, 139 F.Supp.3d 1211, 1220 (D. Or. 2015) ("the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available.") (citing Lapeirre–Gutt, 382 Fed.Appx. at 664). Thus, because Plaintiff received appropriate treatment for his autism, the ALJ's rationale was not clear and convincing.

MSJ at 8.

The cited records from CVRC reflect three visits during the period of October 2022 to 2024, during which Plaintiff and his clinician developed an individualized program plan (IPP) for each upcoming year.  AR 659-71.

In analyzing Plaintiff's contention that he had no specialized mental health treatment, it seems more helpful to address the content of Plaintiff's IPPs rather than simply categorizing his CVRC as specialized or non-specialized.

Plaintiff's argument above emphasizes his goal to improve his social skills noting that he only socialized with his parents but wanted to work on socializing with others.  AR 661.  To the extent Plaintiff continues to have ongoing social deficiencies, these are reflected in the RFC which specifies no public contact and only occasional interaction with supervisors and coworkers.  AR 23.  Further, Plaintiff's social deficiencies were not emblematic of his IPPs as a whole.  For example, Plaintiff's IPP from October 12, 2023 reflects the following:

> **How I communicate my needs and preferences**: I can communicate verbally what I want and how I feel freely with my support group and abroad - I can communicate openly with parents. I have been told that I can be direct or to the point in conversation.
> **Ways to approach me that help me to respond**: I respond well to others who can acknowledge my feelings and those who are also direct with me. I may need things reexplained, but patience and reassurance are key.
> **Decisions I make on my own or with help from others**: I can decide where I want to go, and my parents assist me by driving me there. I decide what I eat and can make simple meals on my own, I also pick my own clothes. My parents help me maintain a schedule and routine for myself, but it is centered around things I enjoy doing like working out, and school. I will usually tell parents what I want, but they will ask me what I want as well
> **What is Important To me**: School and my education is important to me, I love

learning. Getting out of the house often is also important to me, I am not a homebody and I like to have things to do.

**What is Important For me**: My health is important for me; I work out regularly. Support from my family is also important for me.

. . .

**What is happening now**: I can bathe, use the restroom, brush my hair and teeth, put on deodorant, and make simple meals for myself in the microwave. My dad is assisting me with shaving as needed, I can do it independently, but it is not always a very even shave. I have a skin care regimen that I follow without assistance. I pick my own clothes and dress myself; I may need reminders to wear a jacket if it is cold outside. I am now taking out the trash, doing laundry and dishes independently. My family offers positive reinforcement and allows me to try to do things independently first.

**How and where I spend my time during an entire week**: I am enrolled in University of Phoenix online . . . I am excelling in college and even working ahead of the schedule. . .

**What pleases me about how and where I spend my time**: I love to learn and I love having classes from home, I really thrive in that setting. I was going to school for psychology, but I am very interested in anything that involves computers or technology. We are evaluating my strengths and interests currently. My mom will have me try things on my own first and if I need help, she will jump in, but first I try to use google for help or have my computer read what I've typed back to me. I love to go to the library to pick out new books as well as games.

AR 659–61.

These statements by Plaintiff reflect that he had relatively intact functionality and independence in day-to-day tasks, and importantly the ALJ identified many of these findings in support of the RFC.  AR 26.

The ALJ also explained:

> In 2022 and 2023, the claimant was told that CVRC offers independent living skills resources, but the claimant did not access those services (Exhibits 9F, p. 2; 18F, p. 3), there are also Employment First and social recreation opportunities that the claimant has not accessed (Exhibit 18F, p. 3), and additionally there are social skills classes (Exhibit 18F, p. 4). The claimant has not requested services or expressed a need for those services, and he primarily received assistance from his parents. In 2024, the plan indicated that independent living skills services, employment first services, and social recreation opportunities were discussed, and the claimant would reach out if interested (Exhibit 18F, p. 11). The claimant was also to indicate if he would participate in social skills classes, but he has not indicated he would (Exhibit 18F, p. 12). In 2022 and 2023, the claimant was told that CVRC offers independent living skills resources, but the claimant did not access those services (Exhibits 9F, p. 2; 18F, p. 3), there are also Employment First and social recreation opportunities.

8

AR 25–26 (emphasis added).

Therefore, at least as to social skills, Plaintiff is not quite accurate in asserting that the ALJ did not identify any specialized treatment that Plaintiff could have accessed but failed to (MSJ at 8) as the ALJ in fact identified several opportunities Plaintiff was offered to improve social functioning which he apparently failed to do.

Further, beyond social skill deficiencies, the RFC accounts for other deficiencies Plaintiff identified. For example, Plaintiff explained in his IPP questionnaire:

> I can get nervous when my routine/plans are changed last minute, or if I have made a mistake but my mom reassures me that everything is okay and that mistakes happen. If there is going to be a change in my routine, my parents will try to let me know ahead of time - that makes me feel better about it. My parents have been preparing my items for me before we leave the house, such as making sure I have my phone and house key. Through this routine of getting everything together before we leave, I have begun checking in with my parents to make sure they have their items as well. My mom says that I am becoming more observant of those kinds of things, I will even make sure my dad has what he needs to regulate his diabetes before we leave the house.

AR 662.

In accounting for these statements, the RFC reflects that Plaintiff can deal with only occasional changes in a routine work setting. AR 23.

**Next**, Plaintiff contests the ALJ's finding that an inconsistency exists between Plaintiff's statements and the objective medical evidence. AR 27. Plaintiff contends that "contrary to the ALJ's findings, on exam with the agency-ordered consultative examination, Plaintiff had intense eye contact; restricted facial expression; slow rate of speech; sensitive sensory functioning; and restricted affect. AR 511, 513. Such findings aligned with Plaintiff's alleged difficulty interacting with others." MSJ at 9.

However, as set forth above, social interaction limitations were accounted for in the RFC including no contact with the general public and only occasional interaction with supervisors and coworkers. AR 23.

9

Plaintiff further emphasizes that "intellectual testing showed low average results in his verbal comprehension, perceptual reasoning, and working memory."  MSJ at 9 (citing AR 513–14.).  Plaintiff contends the ALJ "failed to explain why these abnormal findings were not consistent with Plaintiff's allegations – allegations which included difficulties interacting with others and completing tasks without help."  MSJ at 9.

Again, Plaintiff's self-description of his own capabilities, as set forth above, reflect an ability to complete tasks without help.  His "low-average" intelligence results corresponded to the 19th, 12th, and 18th percentiles, which arguably cannot be said to reflect a disabling level of intellectual limitations that would preclude all gainful employment.  AR 513–14.

The ALJ also relied on good grades in college (AR 27), although Plaintiff emphasizes he was afforded accommodations of one class at a time, a tutor, and 1.5x time for assignments and contends that "The ALJ failed to explain how Plaintiff's success at school with accommodations translated to the ability to succeed (without accommodations) at a fulltime job."  MSJ at 9.  Yet the RFC does not reflect that Plaintiff requires no accommodations for full time work as it found that he could carry out simple instructions with occasional interaction with supervisors and coworkers, none with the public, and only occasional changes in a routine work setting.  AR 23.

Plaintiff further emphasizes that, per the VE's testimony, "there were no competitive jobs available for an individual who needed 50% more time than expected to complete job tasks."  MSJ at 9 (citing AR 66–67).  However, the fact that he was allowed 1.5x time to complete assignments, standing alone, offers only weak inferential support the conclusion that he would require the same accommodation in a work setting.

**Finally**, Plaintiff argues:

Lastly, the ALJ rejected Plaintiff's allegations because the ALJ found that they were not consistent with his daily activities (Tr. 27). However, the record showed that Plaintiff was only able to go out to a store if his parents stayed nearby (Tr. 71). Plaintiff needed help with his household chores (Tr. 72). His parents needed to read

and sort out the important mail for him (Tr. 56). The ALJ again failed to provide a meaningful explanation as to how any of Plaintiff's daily activities translated to a competitive job. The record showed Plaintiff was an autistic adult who required his parents help shopping, doing homework, and performing chores. Because these activities, reflecting Plaintiff's difficulty with independent living, fully supported Plaintiff's alleged mental dysfunction, the activities did not constitute a clear and convincing reason for the ALJ to discount Plaintiff's reported mental symptoms. See Garrison, 759 F.3d at 1016 (the Ninth Circuit has repeatedly warned that "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

MSJ at 10.

However, as to the quote provided from the Garrison case, Plaintiff apparently does much more beyond resting in bed as he stated that he "is not a homebody" and likes to get out of the house and have things to do.

In sum, Plaintiff's self-described abilities as depicted in the record are far greater than he is currently alleging in this appeal. See AR 659–671 (corrects mom if they miss a turn; independently makes simple meals, picks up clothes, takes out trash, does dishes and laundry, works out 30 minutes per day on a treadmill, maintains personal hygiene, grooming, and skin care regimen, excels in school other than social interaction, and ensures his dad has his diabetes medication before leaving the house.) AR 659–671. And even though Plaintiff emphasizes his "need for support with even routine daily activities," he only offers one example, that of going shopping, albeit while independently using self-checkout. Thus, Plaintiff's claimed limitations are far outweighed by his other independent activities noted on his IPP forms.

**B.** **The ALJ failed to properly evaluate the treating medical source opinion of Kutraj Sidhu, M.D**

**1.** **Applicable Law**

For applications filed on or after March 27, 2017, new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).  Instead, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors.  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered.  *Id.*  "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).  Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 2. Analysis

Plaintiff's treating physician, Dr. Sidhu, opined that Plaintiff had moderate limitations in the categories: 1- understand, remember, or apply information; 2- interact with others; 3- concentrate, persist, or maintain pace; and 4- adapt or manage himself.  AR 520–21.

Dr. Sidhu specifically opined that Plaintiff had moderate limitations in his ability to: 1- remember locations and procedures; 2- perform very short and simple instructions; 3- carry out detailed instructions; 4- adhere to a punctual schedule, maintain attendance; 5- perform without special supervision; 6- work with others without distraction them or himself; 7- complete a normal workday/workweek without interruptions from symptoms; 8- maintain pace without extra rest periods; 9- maintain socially appropriate behavior and cleanliness; and 10- respond appropriately to workplace changes (AR 520–22).  He further opined that Plaintiff had marked limitations in his

12

ability to: 1- carry out detailed instructions; 2- maintain extended attention and concentration; 3- make simple decisions; 4- interact with the general public; 5- ask simple questions or request assistance; 6- avoid hazards and to take precautions; 7- travel in unfamiliar places or use public transportation; and 8- independently set realistic goals or make plans independently.  AR 522

**First,** as to moderate limitations, they are not per se disabling.  See, *Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (SSA defines moderate limitations to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'").

**Second**, as to the marked limitations, some are inapplicable given the RFC.  For example: 1-Dr. Sidhu precluded detailed instructions, but the RFC only requires simple ones (AR 23); 2- Dr. Sidhu precluded interaction with the general public, and the RFC specified that Plaintiff cannot interact with the general public.  AR 25.

As for the 1.5x time accommodation, it is difficult to justify that this somewhat modest accommodation constitutes a *markedly* limited capacity as opposed to being classified as a mild or moderate limitation in the ability to maintain attention and concentration, especially given that Plaintiff earned a 3.72 GPA which arguably demonstrates adequate attention and concentration.

Dr. Sidhu further opined that Plaintiff had marked limitations in setting realistic goals, however Plaintiff's IPP plan indicated he intended to graduate college at the University of Phoenix (AR 659–671), and the record reveals that he was on track to do so.

As to allegedly marked limitations in asking simple questions or requesting assistance, Plaintiff's IPP plan suggests otherwise when Plaintiff states, "I respond well to others who can acknowledge my feelings and those who are also direct with me. I may need things reexplained, but patience and reassurance are key. I prefer to interact with others on my own terms, but I will respond if approached."  AR 679.

Finally, as to the opined marked limitations in ability to travel in unfamiliar places or use public transportation,  in conflict is a statement by Plaintiff contained in an IPP plan where Plaintiff explained,  "I can decide where I want to go, and my parents assist me by driving me there" (AR 659).  Plaintiff has also stated that he is not a homebody, likes to get out of the house, plans to travel

more, and to visit the Arc Experience in Kentucky.  AR 673.

Thus, Dr. Sidhu's opinion warranted no changes to the RFC.

**C.** **The ALJ failed to properly evaluate the examining medical source opinion of the psychological consultative examiner Tikesha Leslie-Jones, Ph.D.**

To begin, the limitations and related evidence in this claim are largely duplicative of the above discussion.

Here, Dr. Leslie-Jones conducted a consultative psychiatric evaluation at the request of the agency.  AR 511.  On exam, Plaintiff had intense eye contact, restricted facial expression, slow speech, sensitive sensory functioning, and restricted affect.  AR 511, 513.  Plaintiff's intellectual testing showed low average results in his verbal comprehension, perceptual reasoning, and working memory.  AR 513–514.  Dr. Leslie-Jones opined that Plaintiff had: 1- moderate limitations as to detailed and complex tasks; 2- moderate limitations as to consistency; 3- moderate to significant limitations as to performing without special supervision; 4- moderate to significant limitations in completing a normal workday or workweek without psychiatric interruptions; 5- significant limitations in social interaction; and 6- significant limitations in his ability to manage workplace stress.  AR 516–17.

Here again, the opined moderate limitations as to detailed and complex tasks are reflected in the RFC which requires only simple tasks.  AR 23.  Social interaction is also reflected in the RFC which specifies occasional supervisor and co-worker interaction and no interaction with the general public.  AR 23.

As for limitations in stress tolerance, they are likewise reflected in the RFC for simple tasks, and simple tasks encompass low stress tolerance.  Henry v. Colvin, No. 1:15-cv-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (simple tasks encompasses low stress tolerance); Keller v. Colvin, No. 2:13-cv-0221-CKD, 2014 WL 130493, at *3 (E.D. Cal. Jan. 13, 2014) (simple tasks "appropriately captured" physician's opinion that claimant required "low stress settings")).

As to opinions 1 through 4 above, it is again worth noting that moderate limitations as a whole are not per se disabling.  See, Rose, 2021 WL 1612091, at *3 (SSA defines a 'moderate'

limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'")

As for the opined limitations regarding Plaintiff's ability to perform work activities consistently without additional supervision and without interruptions resulting from his psychiatric condition, as the ALJ explained, they are belied Plaintiff's success in school.

As to the VE's testimony that 10% off-task behavior is the threshold beyond which it would not be tolerated in the workplace (AR 64), it is not clear whether "moderate" or "moderate to significant" limitations equate to more than 10% of a workday.

Plaintiff finally emphasizes that his intellectual testing was low average in verbal comprehension, perceptual reasoning, and working memory (AR 513–514), corresponding to the 19th, 12th, and 18th percentiles. Yet it cannot be said here that these necessarily reflect disabling intellectual limitation, particularly given other metrics of intellectual capacity such as Plaintiff's educational accomplishments.

Thus, the ALJ committed no error with respect to the opinions of the psychological consultative examiner Tikesha Leslie-Jones, Ph.D.

### D. The ALJ failed to properly evaluate the medical source opinion of the State agency psychological consultant Joan Joynson, Ph.D.

Dr. Joynson reviewed the record and opined that Plaintiff was limited to simple and repetitive work, was limited to 1 to 3 step tasks, was limited to work with only occasional changes, was able to adequately respond to coworkers and supervisors, and was limited to low public contact. AR 109, 120. The ALJ found the opinion persuasive and supported. Plaintiff argues as follows:

> Despite this finding, though, the ALJ failed to incorporate crucial limitations assessed by Dr. Joynson. In particular, while Dr. Joynson opined that Plaintiff was limited to 1 to 3 step instructions (Tr. 109, 120), the ALJ's residual functional capacity did not include a corresponding limitation (Tr. 23). Rather, the ALJ found that Plaintiff was able to perform simple instructions (Tr. 23).
> The ALJ's error was harmful. The Ninth Circuit has found that there is an apparent conflict between a restriction to 1 and 2 step tasks and the ability to perform an occupation with a Dictionary of Occupational Titles (DOT) Reasoning Level of 2. See Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1003 (9th Cir. 2015). By extension, some courts within the Ninth Circuit have held that a claimant restricted to 3-step tasks could not necessarily perform occupations requiring a DOT Reasoning Level of 2; and thus, an ALJ's failure to incorporate a restriction to 3-

15

step tasks in the claimant's RFC was not harmless error. See Diane Kay W. v. Saul, Case No. 20-5641-MAT, 2020 WL 7241428, *2-3 (W.D. Wash. Dec. 9, 2020) ("there is no evidence that every reasoning level two job requires no more than three-step tasks. And there is no evidence in the record that the jobs the ALJ relied on required only three-step tasks…at step five, it is the Commissioner who bears the burden to show that a claimant is not disabled because he or she can perform work that exists in significant numbers in the national economy."). MSJ at 20 (emphasis added).

To begin, the 9th Circuit has found that there is an apparent conflict between a restriction of 1 and 2 step tasks with jobs having a Reasoning Level of R2. See Rounds v. Comm'r of Soc. Sec., 807 F.3d 996, 1003 (9th Cir. 2015).

Importantly as pointed out above, Dr. Joynson did not opine that plaintiff was limited to 1 to 2 step tasks, but rather opined that Plaintiff was limited to 1 to 3 step instructions. The question presented then is whether this limitation precludes Plaintiff from performing jobs that require a DOT reasoning level of R2.[5]

Further, as Defendant emphasizes, several district courts in this circuit have found a restriction to 1 to 3 step tasks to be consistent with a limitation to simple work and/or jobs with a DOT reasoning level of R2. See, e.g., Kaitlyn B. v. Comm'r of Social Sec., 2021 WL 2432324, at *5 (W.D. Wash. June 15, 2021); Howard v. Saul, 2020 WL 7490378, at *3 (D. Nev. Dec. 18, 2020); Ray v. Comm'r of Social Sec. Admin., 2019 WL 77432, at *1 (W.D. Wash. Jan. 2, 2019); Bannister v. Colvin, 2016 WL 5141722, at *5 (W.D. Wash. Sep. 21, 2016); Pharris v. Astrue, 2011 WL 3882508, at *12 (E.D. Cal. Sep. 2, 2011) (finding an RFC restriction to "simple routine tasks" to be consistent with "[a] limitation to three and four step instructions" and jobs requiring Level 2 reasoning).

Plaintiff identifies only 1 case suggesting otherwise, that being Diane Kay W, 2020 WL 7241428 at *2-3 (W.D. Wash. Dec. 9, 2020). But even if Plaintiff were correct that Dr. Joynson's opined limitation to 1 to 3 step tasks did preclude jobs with a DOT reasoning level of R2, as noted in the footnote below, that would not affect the outcome here as the VE did identify 1 job with a reasoning level of only *R1*, housekeeping cleaner, DOT 323.687-014.

---

[5] Even if so, the VE identified an R1 job, namely housekeeping cleaner, DOT 323.687-014.

16

Thus, the ALJ committed no error with respect to Dr. Joynson's opinion which limited Plaintiff to 1 to 3 step tasks, and which is adequately encapsulated by the RFC restriction for simple work because simple work does not preclude jobs that have a DOT reasoning level of R1 or R2.

### E.    The ALJ failed to provide germane reasons for discounting the testimony of Plaintiff's mother.

Plaintiff's mother testified that Plaintiff had the following special accommodations in college: extra time for homework, tests, and responses to other students' work.  AR 69–70. Plaintiff's mother also testified that he needed her around at the store (AR 71), and that he needed help with household chores.  AR 72.  AR 69–71.

To begin, lay witness testimony is "competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394 (9th Cir. 1984) (the ALJ must explain why "significant probative evidence has been rejected").

Here, because Plaintiff's self-described subjective complaints/limitations are arguably so similar to that of his mother's testimony, the "germane to each witness" requirement is satisfied and no additional explanation by the ALJ is required beyond what the ALJ explained concerning Plaintiff's own account of his complaints/limitations.  Moreover, when an ALJ's reasoning is sufficient for rejecting a Plaintiff testimony, and that testimony is similar to another lay witnesses' testimony, then that reasoning is equally applicable to the lay witness.  See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (where the ALJ gave clear and convincing reasons for rejecting the claimant's own subjective complaints, and the lay witness's testimony was similar, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony.).

Thus, the ALJ did not err with respect to Plaintiff mother's testimony.

### VII.    Conclusion and Order

Substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

17

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 9) is **DENIED**.

2. Defendant's cross motion (Doc. 11) is **GRANTED.**

3. The Commissioner's Decision is **AFFIRMED**

4. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated:    **May 25, 2026**                    **/s/ Gary S. Austin**
                                                          UNITED STATES MAGISTRATE JUDGE

18